IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| BRADLEY A. SMITH and | * | CHAPTER 13 |
| TAMMY G. SMITH, | * | |
|     Debtors | * | |
| | * | CASE NO. 1:09-bk-02875MDF |
| CHARLES J. DeHART, III, | * | |
| STANDING CHAPTER 13 TRUSTEE, | * | |
|     Movant | * | |
| | * | |
|     v. | * | |
| | * | |
| BRADLEY A. SMITH and | * | |
| TAMMY G. SMITH, | * | |
|     Respondents | * | |
| | * | |

_____

| | | |
|---|---|---|
| HAROLD R. BURGER and | * | CHAPTER 13 |
| SRI W. BURGER, | * | |
|     Debtors | * | |
| | * | CASE NO. 1:09-bk-06710MDF |
| CHARLES J. DeHART, III, | * | |
| STANDING CHAPTER 13 TRUSTEE, | * | |
|     Movant | * | |
| | * | |
|     v. | * | |
| | * | |
| HAROLD R. BURGER and | * | |
| SRI W. BURGER, | * | |
|     Respondents | * | |
| | * | |

_____

| | | |
|---|---|---|
| **GARY RAYMOND BRUNELL and** | * | **CHAPTER 13** |
| **HEATHER NICHOLE BRUNELL,** | * | |
| Debtors | * | |
| | * | **CASE NO. 1:09-bk-02434MDF** |
| **CHARLES J. DeHART, III,** | * | |
| **STANDING CHAPTER 13 TRUSTEE,** | * | |
| Movant | * | |
| | * | |
| v. | * | |
| | * | |
| **GARY RAYMOND BRUNELL and** | * | |
| **HEATHER NICHOLE BRUNELL,** | * | |
| Respondents | * | |
| | * | |

## OPINION

The above-subject cases may be decided together because they share a common dispositive legal issue – whether Chapter13 debtors may calculate their disposable income for plan confirmation purposes by deducting payments on mortgages that their respective plans propose to strip off.[1] The facts of each case are straightforward and have been stipulated to by the parties, as described below. As I will discuss, I conclude that debtors must include in their Chapter 13 plans monthly payment amounts on mortgages that will be stripped off.

### I. Background

In a Chapter 13 bankruptcy case, debtors are required to propose a plan into which they will pay a certain amount of their income per month to be distributed to creditors under terms proposed in their plan and approved by the court. The amount of income to be paid into the plan each month depends on what the debtors can afford to pay. "What the debtors can afford to pay,"

---

[1] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A),(B), (K), (L) and (O). This Opinion constitutes findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052, which is applicable to contested matters pursuant to Fed. R. Bankr. P. 9014.

2

also known as "disposable income" in bankruptcy parlance, is a concept that is subject to interpretation and dispute.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") attempted to minimize the occurrence of these disputes by defining the term "disposable income." For purposes of Chapter 13, "disposable income means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended for the maintenance and support of the debtor . . . ." 11 U.S.C. § 1325(b)(2)(A)(i). "Amounts reasonably necessary to be expended" for the maintenance and support of the debtor is defined by BAPCPA at 11 U.S.C. § 1325(b)(3), which in turn references 11 U.S.C. § 707(b)(2). Section 707(b)(2), colloquially known as the "means test" provision, sets forth an intricate formula for determining whether a debtor's attempt to file a Chapter 7 case should be presumed to be abusive.

To assist in the implementation of BAPCPA's means testing requirements in Chapter 13 cases, this formula was converted to a form known as Official Form B22C, an eight-page document consisting of 61 "Lines" and numerous additional spaces into which debtors insert specific dollar amounts reflecting their income and expenses in specified categories. Relevant to the discussion below, one of the lines, Line 47, calls for a debtor to list any "future payments on secured claims." These payments may be deducted from a debtor's monthly income. Completing Form B22C produces a figure at Line 59 that is labeled "Monthly Disposable Income Under § 1325(b)(2)." Because of its reference to § 1325(b)(2), the figure at Line 59 has been used by Chapter 13 debtors to determine the amounts to be paid into their plans. In each of the within cases, the Trustee objects to that practice because not all the expenses deducted on the means test form will be actual expenses in the future.

## II. Factual Findings

*A. Bradley and Tammy Smith*

Bradley and Tammy Smith (the "Smiths") filed a Chapter 13 petition on April 16, 2009. Their schedules value their residence in Blain, Pennsylvania at approximately $196,000. "An appraisal filed with debtors' Third Amended Plan confirms this value." (Smith Stipulation ¶ 3.) EMC Mortgage holds a first mortgage in the amount of approximately $197,208. Irwin Home Finance ("Irwin") holds a second mortgage in the amount of approximately $155,000. If confirmed, the Smiths' Fourth Amended Plan would strip off the Irwin lien under §506(a).[2] The Smiths propose to fund this plan with payments of $762 per month for sixty months. The Smiths apparently calculate the amount of this payment based on the "disposable income" figures shown on their amended Form B22C.[3] On Line 47, the Smiths deduct from monthly disposable income the payment to Irwin of $1433. On December 11, 2009, Charles J. DeHart, III, (the "Trustee") objected to confirmation of the Smiths' plan on the grounds that they could pay more than $762 per month into their plan if the Irwin lien were stripped off, thus erasing the $1433 monthly

---

[2] The parties' Stipulation of Facts states that "[a]lthough the parties question the ability of debtors to strip this lien from the real estate under [§522(f)], they will treat this provision as an avoidance of the lien." (Smith Stipulation ¶ 6.) The Smiths' brief says nothing about their avoiding a lien under § 522(f), but rather invokes cases involving lien stripping under § 506(a)(1). Irwin clearly has a consensual mortgage and not a judicial lien or a non-possessory, non-purchase-money security interest as described in § 522(f)(1)(B). Therefore, if Irwin does not hold a secured claim it is because there is no value available to which the lien can attach as determined under § 506(a)(1). Section 522(f) is irrelevant.

[3] The actual amount of the Smiths' monthly disposable income on Line 59 is a negative ($579.03), and so it is not obvious how the Smiths' arrived at the figure of $762 per month for their plan. Nonetheless, the parties have stipulated that the Trustee's objection to confirmation was filed "on the basis that debtors deducted the lien they were avoiding on Line 47 of Form B22C." (Smith Stipulation ¶ 8.)

4

liability. When the monthly payment to Irwin is eliminated, the Smiths' monthly disposable income on Line 59 is $853.97.

   B. *Harold and Sri Burger*

Harold and Sri Burger (the "Burgers") filed a Chapter 13 petition on August 31, 2009 listing a residence in Greencastle, Pennsylvania valued at $180,360. The accuracy of that value is not disputed by the Trustee. Schedule D states that Homecomings Financial ("Homecomings") holds a first mortgage in the amount of $191,879 and a second mortgage in the amount of $39,085. On Line 47, the Burgers' Form B22C deducts from monthly disposable income the contractual monthly payment on the junior Homecomings lien in the amount of $475 even though the plan indicates that the lien is to be avoided at confirmation pursuant to §506(a). According to Line 59 of the Burgers' Form B22C, their monthly disposable income is $99.25. They propose to pay $267 per month into their sixty-month plan.

On November 18, 2009, the Trustee objected to confirmation of the Burgers' plan on the grounds that they could not claim the monthly payment on the Homecomings lien as a future expense on Line 47 of Form B22C if they are stripping off the lien through the plan. When the monthly payment to Homecomings is added to their reported disposable income of $99.25, Debtors have $574.25 per month in actual disposable income.

   C. *Gary and Heather Brunell*

Gary and Heather Brunell (the "Brunells") filed a Chapter 13 petition on March 31, 2009. The Brunells' residence is valued at $315,000 on schedule A. Countrywide Bank holds a first mortgage in the amount of $369,251. Citimortgage ("Citi") holds a second mortgage, the amount of which was not stipulated to by the parties. Citi filed a proof of claim in the amount of

5

$74,212. The Brunells' plan proposes to strip off the Citi mortgage, but their Form B22C deducts from monthly disposable income $521.56, the monthly amount due under their note with Citi. Line 59 of Form B22C shows negative disposable income of $70.63. If the Citi payment were not deducted on Line 47, the disposable income figure would be $450.93. The Brunells propose to pay $76 per month into their plan. On June 26, 2009, the Trustee objected to confirmation of the Brunells' plan on the grounds that they could not claim the monthly payment to Citi as a secured creditor when they were proposing to avoid its lien in their bankruptcy case.

## II. Discussion

The Trustee filed the same brief in each of the above cases. His brief frames the issue as follows: "Whether the holder of a junior mortgage treated as an unsecured claim in debtors' Chapter 13 plan is a secured creditor under §1325(b) of the Bankruptcy Code?" The Trustee suggests that the answer to this question is no and that an unsecured claim for purposes of payment in a plan is also an unsecured claim for purposes of calculating disposable income under 11 U.S.C. § 1325(b).

In relevant part, § 1325(b) states that if the trustee objects to the confirmation of a plan, the court may not approve it unless the plan provides that all of the debtors' projected disposable income will be used to pay unsecured creditors. 11 U.S.C. § 1325(b)(1)(B). If a debtor's current monthly income multiplied by twelve exceeds the median family income for the applicable state,[4] then the amounts reasonably necessary to be expended for the maintenance or support of debtors and their dependents are determined by subparagraphs (A) and (B) of §707(b)(2). 11 U.S.C. §1325(b)(3). Through the following language, § 707(b)(2)(A)(iii)(I) permits deductions from

---

[4] In each of the cases before me, the debtors' income is above-median.

Case 1:09-bk-02434-MDF    Doc 41    Filed 09/28/10    Entered 09/28/10 13:07:51    Desc
Main Document    Page 6 of 14

monthly disposable income for secured debts.

> The debtor's average monthly payments on account of the secured debts shall be calculated as the sum of –
>
> > (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition . . . divided by 60.

11 U.S.C. § 707(b)(2)(A)(iii)(I). The payments to which this subparagraph refers are to be listed on Line 47 of Form B22C. In the instant matters, the debtors argue that the monthly amounts of their respective plan payments are fixed by the amount on Line 59, which in turn is derived from Line 47. The Trustee counters that calculation of the plan payment is not mechanical, but requires a more nuanced and forward-looking approach.

*A. The Trustee's Position*

The Trustee's argument focuses on 11 U.S.C. § 506(a)(1), which limits the value of a secured claim to the value of the collateral to which the lien attaches. *See In re McDonald*, 205 F.3d 606 (3d Cir. 2000). The Trustee argues that it is § 506(a)(1) that empowers a debtor to render a purportedly secured interest unsecured. Accordingly, the term "secured" in §707(b)(2)(A)(iii)(I) must be understood as incorporating the limitations of § 506(a). If a lien is stripped off in connection with confirmation of a plan, the creditor is not a "secured creditor" and, for purposes of §707(b)(2)(A)(iii)(I), the payments are not payments that are "scheduled as contractually due to [a] secured creditor." *See In re Thissen*, 400 B.R. 776, 781-2 (Bankr. E.D. Cal. 2009) *aff'd* 406 B.R. 888 (E.D. Cal. 2009) ("[b]y definition, the term 'secured creditor' as used in §707(b)(2)(A)(iii)(I) is analogous to the holder of a 'secured claim' as that term is defined in §506(a)(1)").

7

### B. The Debtors' Positions

Each of the instant debtors frames their argument somewhat differently.

#### 1. The Smiths' Argument

The Smiths focus on the phrase "scheduled as contractually due" in §707(b)(2)(A)(iii)(I) to support their position that § 1325(b) allows a debtor to calculate disposable income after deducting the monthly payment on *any* secured debt that is "scheduled as contractually due" and payable to a secured creditor over the ensuing five years. They rely on my decision in *In re Mundy*, 363 B.R. 407 (Bankr. M.D. Pa. 2008), which interpreted the phrase "scheduled as contractually due" to mean "the payments due under the contract between the debtor and the secured creditor regardless of the debtor's intent with respect to retention of the collateral or reaffirmation of the debt." *Id.*, 363 B.R. at 413. I will discuss the *Mundy* decision in a separate section of this Opinion.

#### 2. The Burgers' Argument

The Burgers counter the Trustee's argument by citing *In re SubMicron Systems Corp.*, 432 F.3d 448 (3d Cir. 2006), for the general proposition that state law determines whether claims asserted by creditors in bankruptcy are secured. *Id.* at 458. The Burgers assert that state law, not § 506(a), must be applied to decide whether the Homecomings claim is secured or not. They further cite *In re Brooks*, 344 B.R. 417 (Bankr. E.D. N.C. 2006), which held that §506(a) is "strictly a method of valuing an allowed secured claim, rather than a definitional provision . . . ." *Id.* at 421. In *Brooks*, a Chapter 13 plan proposed to pay no interest to a car creditor with a "910

8

claim."[5] The *Brooks* debtors based their proposal on the same argument now advanced by the Trustee – that, for purposes of § 1325(a)(5), § 506 determines whether a claim is defined as "secured" or not. Based on its reading of *Associates Commercial Corp. v. Rash*, 520 U.S. 953 (1997), the *Brooks* court rejected the debtors' argument, observing that "[i]n its careful analysis of [§ 506(a)], the [*Rash*] Court never suggested that § 506(a) defines 'secured' or that a claim is unsecured for the purposes of Chapter 13 plan confirmation without § 506." *In re Brooks*, 344 B.R. at 421.

### 3. The Brunells' Argument

The Brunells join in the Burgers' arguments that § 506 is not a definitional section, and that state law governs the question of whether a claim is secured or unsecured. Without citing caselaw, the Brunells also argue that "the debt owed to the second mortgagee remains secured until such time as the plan is confirmed *and* the Debtors receive their discharge. Until the discharge is entered, . . . the lien remains intact." (Brunells' Brief at p. 3.)

### C. Hamilton v. Lanning

While the parties' briefs frame their arguments based on the law that existed when these matters were submitted for decision, a recent ruling from the United States Supreme Court dictates the result in each case. On June 7, 2010, the Supreme Court issued *Hamilton v. Lanning*, 130 S.Ct. 2464 (2010), which held that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 2478.

---

[5]A "910 claim" is a claim for a purchase money security interest in a vehicle purchased within the 910 day period preceding the filing of a bankruptcy petition. Under the so-called "hanging paragraph" of § 1325(a)(5), § 506(a) "does not apply" to a 910 claim.

8

The matter at issue in *Lanning* involved the "projected disposable income" calculation on the income side of the ledger, not the expense side. Debtor Lanning's projected disposable income as calculated on Form B22C did not accurately reflect her actual net monthly income going forward because she had received a one-time financial windfall through a buyout from her former employer within the six month period preceding her Chapter 13 petition.[6] Because this income was not anticipated to be received in the future, she proposed a plan that used the disposable income figure reported on her schedule J, rather than the amount listed on Line 59 of Form B22C. The Chapter 13 trustee objected to the plan, asserting that the BAPCPA statutory scheme calls for a mechanical approach to the calculation of plan payments using Line 59 of Form B22C. Debtor Lanning argued that a more "forward-looking" approach was contemplated by Congress in drafting BAPCPA and that schedule J more accurately reflected her future disposable income than did Line 59. For his part, the Chapter 13 trustee did not dispute that Lanning was unable financially to make plan payments in the amount required by Line 59.

The bankruptcy court agreed with Lanning, reasoning that the forward-looking approach "was necessary to avoid the absurd result of denying bankruptcy protection to individuals with deteriorating finances in the six months before filing." *Id.* at 2471. The Bankruptcy Appellate Panel affirmed the bankruptcy court, reasoning that "there was no reason to believe that Congress intended to alter the pre-BAPCPA practice under which bankruptcy courts determine projected disposable income." *Id.* The Tenth Circuit also affirmed, stating that the projected disposable income calculation "should begin with the 'presumption' that the figure yielded by the

---

[6]For means testing purposes, BAPCPA calculates a debtor's income through a formula that takes into account only the amounts received by the debtor during the six month period immediately preceding the filing of the petition. 11 U.S.C. §§ 101(10A) and 1325(b)(2).

Case 1:09-bk-02434-MDF    Doc 41    Filed 09/28/10    Entered 09/28/10 13:07:51    Desc
Main Document      Page 10 of 14

mechanical approach is correct," but allowing that it could be "rebutted by evidence of substantial change in the debtor's circumstances." *Id.*

The Supreme Court granted certiorari specifically "to decide how a bankruptcy court should calculate a debtor's projected disposable income." *Id.* at 2469. It concluded that the "forward looking approach," under which the figures contained in Form B22C are not necessarily controlling, is correct. *Id.*

The Court commenced its discussion by noting that the word "projected" modifies the term "disposable income" in § 1325(b)(1)(B) and that income projections are commonly based on prognosticable factors as much as on historical income averages. "[I]n ordinary usage, future occurrences are not 'projected' based on the assumption that the past will necessarily repeat itself." *Id.* at 2471. The Court illustrated its point with references to political election projections, which rely as much on incoming data as historical voting trends; sales projections in business, which rely on current dynamics of supply and demand; and crop yield projections as used in federal agricultural statutes, which rely on historical data but may be "adjusted for abnormal weather conditions." *Id.* at 2471 (citing The Agricultural Adjustment Act of 1938, 7 U.S.C. § 1301(b)(8)(B)).

*Lanning* also recognized pre-BAPCPA rulings in which courts determined projected disposable income after examining monthly income as reported on schedule I. All of the pre-BAPCPA cases cited in *Lanning* dealt with projections of income, not expenses, but the Supreme Court cited with approval 8 Collier on Bankruptcy, ¶ 1325.08[4][b], at 1325-60 (15th ed. rev. 2007), which suggests that "[a]s with the income side of the budget, the court must simply use the debtor's current expenses, *unless a change in them is virtually certain.*" *Lanning*, 130 S.Ct.

11

at 2473 (emphasis in original). The Court found it appropriate to look beyond the plain language of BAPCPA and to examine past practice "because we 'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.'" *Id.* 130 S.Ct. at 2473 (citations omitted).

*Lanning* also cited the language of § 1325(b)(1) in support of its conclusion. "[Section] 1325(b)(1)(B)'s reference to projected disposable income '*to be received* in the applicable commitment period' strongly favors the forward-looking approach." *Lanning*, 130 S.Ct. at 2474 (emphasis added). "The mechanical approach effectively reads this phrase out of the statute when a debtor's current disposable income is substantially higher than the income that the debtor predictably will receive during the plan period." *Id.* The Court further reasoned that "§ 1325(b)(1) directs courts to determine projected disposable income 'as of the effective date of the plan'. . . . Had Congress intended for projected disposable income to be nothing more than a multiple of disposable income in all cases, we see no reason why Congress would not have required courts to determine that value as of the *filing* date of the plan." *Id.* (emphasis in original).

In summary, the Supreme Court held "that when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income *or expenses* that are known or virtually certain at the time of confirmation." *Id.* at 2478 (emphasis added). To hold otherwise and apply the mechanical approach, the Court noted, would "produce senseless results that we do not think Congress intended." *Id.* at 2475.

Applying *Lanning*'s holding to the instant cases, I conclude that it is "virtually certain" in each case that the respective debtors will experience a change in their expenses when their

12

proposed plans are confirmed, and the liens at issue are stripped. None of the debtors anticipate making payments on the debts at issue during the pendency of their respective Chapter 13 cases.[7] Accordingly, on the effective date of the plan, the payment amounts on these liens will not be reasonably necessary for the maintenance and support of the debtors under §§ 1325(b)(2) and (3). Therefore, they are not amounts that may be withheld from payment into the debtors' respective plans.

    D. Lanning's *effect on* In re Mundy

As the Smith's brief discusses, I have held that the phrase "scheduled as contractually due" in §707(b)(2)(A)(iii)(I) means "the payments due under the contract between the debtor and the secured creditor regardless of the debtor's intent with respect to retention of the collateral" post-petition. *In re Mundy*, 363 B.R. at 413. I based this decision on a finding that §707(b)(2)(A)(iii)(I) is not ambiguous and that a plain reading of its language in the context of §707(b), §1325(b)(3) and BAPCPA as a whole demonstrated Congressional intent to eliminate any guesswork in the calculation of plan payments by providing a formula for uniform application in all Chapter 13 cases. *Id. Lanning*'s examination of authority outside the BAPCPA text (e.g., pre-BAPCPA practice, the Agricultural Adjustment Act of 1938) and its determination that Congress surely did not intend to produce the "senseless results" risked by a mechanical approach, demonstrates that my interpretation of the meaning of "projected disposable income" was in error. Accordingly, I conclude that *Lanning* effectively overturns my ruling in *Mundy* for purposes of future Chapter 13 cases.

---

    [7]Whether the lien is forever stripped on the date of confirmation, or whether, as the Brunells suggest, a "permanent" stripping does not occur until the Chapter 13 discharge is entered, is not before this Court.

### III. Conclusion

The Supreme Court's decision in *Lanning* dictates that the objections in the instant cases be sustained. None of the debtors propose to pay "all" of their "projected disposable income" into their plan because none of their plan payments take into account the fact that, after the effective date of the plan, they will not make the payments on liens stripped by the plan. Therefore, their plans cannot be confirmed.

An appropriate order will be entered in each case.

**By the Court,**

*/s/ Mary D. France*
Chief Bankruptcy Judge

Date: September 28, 2010